FILED
JUL 17 2023
MARY C. LOEWENGUTH, CLERK
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

In the Matter of the Petition of JOHN H. HOLLIDAY, JR.
and SARAH F. HOLLIDAY,

　　　　　　　　　　　　　　　　Petitioners.

Civil Action No.: 23-MC-27(JLS)

---

## NOTICE OF PETITION FOR AN ORDER AUTHORIZING
## <u>THE PRE-ACTION TESTIMONY OF JOHN H. HOLLIDAY, JR.</u>

**PETITION BY:** PORTER LAW GROUP
*Attorneys for Petitioners*

**HEARING DATE:** _____, at
_____ a.m./p.m., before the Honorable
_____,
at the United States District Court for the Western
District of New York, 2 Niagara Square, Buffalo, New
York 14202-3498.

**SUPPORTING PAPERS:** Petition of John H. Holliday, Jr., verified on July 14,
2023; Declaration of Mary E. Langan, Esq., dated July
14, 2023, with Exhibits, including Declaration of board-
certified oncologist, Aymen Elfiky, M.D. M.A., MPH,
MSC, dated July 14, 2923; and Memorandum of Law in
Support of Petition dated July 14, 2023.

**RELIEF SOUGHT:** That a Hearing take place at the United States District
Court for the Western District of New York, 2 Niagara
Square, Buffalo, New York 14202-3498, within seven
(7) days of the date of this Petition, or on a date to be
determined by the Court[1], wherein Petitioner requests
an Order:

1. authorizing and directing the pre-action deposition,
and videotaped trial testimony, of Petitioner John H.
Holliday, Jr., a claimant and anticipated Plaintiff
under the Federal Tort Claims Act ("FTCA"), by
reason of his terminal illness and imminent demise,

---

[1] Petitioners are requesting an *expedited* hearing in light of the exigent circumstances surrounding Mr. Holliday's health.
*See In re I-35W Bridge Collapse Site Inspection,* 243 F.R.D. 349 (D.Minn.2007) (where the Court noted the notice
requirement for the hearing, and stated that "[g]iven the exigent circumstances, this Court would be sympathetic to a
request to modify this requirement." *Id.* at 353.)

within fourteen (14) days of entry of the Court's Order; and

2.  granting whatever further or different relief the Court deems just and proper.

**GROUNDS FOR RELIEF:**  Rule 27 of the Federal Rules of Civil Procedure ("FRCP"), and applicable case law.

**NATURE OF ACTION:**  FTCA; Medical Malpractice.

DATED:  July 14, 2023

PORTER LAW GROUP
*Attorneys for Petitioners*

By:  Mary E Langan, of Counsel (517442)

Office & P.O. Address
100 Madison Street, 15th Floor
Syracuse, New York 13202-2725
315.477.9900
315.477.9923 (facsimile)

**FAX SERVICE NOT ACCEPTED**

TO:  U.S. ATTORNEY FOR THE WESTERN DISTRICT OF NEW YORK
Honorable Trini E. Ross, U.S. Attorney
138 Delaware Avenue
Buffalo, New York 14202

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

In the Matter of the Petition of JOHN H. HOLLIDAY, JR. and SARAH F. HOLLIDAY,

Civil Action No.:

Petitioners.

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' APPLICATION FOR AN ORDER PRESERVING THE PRE-ACTION TESTIMONY OF JOHN H. HOLLIDAY, JR.

Rule 27 of the Federal Rules of Civil Procedure ("FRCP") permits a prospective plaintiff or defendant to preserve the testimony of a person before the start of a lawsuit by obtaining a court order authorizing the same. *See* Fed.R.Civ.P. 27(a). ("A person who wants to perpetuate testimony about any matter cognizable in a United States court may file a verified petition in the district court for the district where any expected adverse party resides."). After the examination, the testimony is "thereby ... preserved or perpetuated and, if necessary ... available for use in [a] future legal proceeding. *See In re Hopson Marine Transp.*, 168 F.R.D. 560, 564 (E.D. La. 1996).

Rule 27 is employed in "situations where, for one reason or another, testimony might be lost to [a] prospective litigant unless taken immediately," without waiting until after the commencement of an expected lawsuit. *See Petition of Ferkauf*, 3 F.R.D. 89, 91 (S.D.N.Y. 1943); *see also In re Yamaha Motor Corp,* 251 F.R.D. 97.98 (N.D.N.Y. 2008) (*citing Ash v Cort*, 512 F.2d 909, 911 (3d Cir. 1975). "[A] court, within its sound discretion, may grant an order to take a deposition 'if it is satisfied that a failure or a delay of justice may thereby be prevented." *Id.* at 98-99 (*quoting Mosseller v United States*, 158 F.2d 380, 382 (2d Cir. 1947)).

A proper proceeding under FRCP 27 begins with a verified petition, and a showing "that in the contemplated action, for which the testimony is being perpetuated, federal jurisdiction would

exist and thus is a matter that may be cognizable in the federal courts." *See Arizona v. California*,

292 U.S. 341, 347 (1934).  The verified petition must show five facts to the satisfaction of the Court:

A. that the petitioner expects to be a party to an action cognizable in a United States court but cannot presently bring it or cause it to be brought;

B. the subject matter of the expected action and the petitioner's interest;

C. the facts that the petitioner wants to establish by the proposed testimony and the reasons to perpetuate it;

D. the names or a description of the persons whom the petitioner expects to be adverse parties and their addresses, so far as known; and

E. the name, address, and expected substance of the testimony of each deponent.

*See* Fed. R. Civ. P. 27(a)(1).

Based on these five facts, District Courts within the Second Circuit have recognized three

elements that must be established for such a petition to succeed:  (1) a focused explanation of what

the petitioner anticipates any testimony would demonstrate, and a persuasive explanation of why the

testimony will not be used to discover evidence for the purpose of filing a complaint; (2) a good-

faith expectation that the petitioner will be a party to an action cognizable in a United States court,

but that it cannot currently bring the action or cause the action to be brought; and (3) an objective

showing that, without a Rule 27 order, known testimony would otherwise be lost, concealed or

destroyed.  *See In Re Yamaha,* 251 F.R.D. at 99, (*citing In the Matter of Petition of Allegretti*, 229

F.R.D. 93, 96 (S.D.N.Y. 2005).

Courts require petitioners to make "a particularized showing that intervention prior to

commencement of an action is necessary to preserve the subject evidence." *See In re John W.*

*Danforth Group, Inc.*, 13-MC-33S, 2013 U.S. Dist. LEXIS 92476 at *5-6 (W.D.N.Y. June 30,

2013).  "Common elements satisfying this particularization requirement include geographical or

jurisdictional constraints, a deponent's advanced age **or illness**, or actual destruction of evidence."

*Id.* at *6 (internal quotation marks omitted) (*citing In re Liquor Salesmen's Union*, 12 CV-2786,

2012 U.S. Dist. LEXIS 100685 at *3, 2012 WL 2952391 (E.D.N.Y. July 19, 2012)). **A petitioner's health weighs in favor of granting the petition**. *See In re Town of Amenia*, 200 F.R.D. at 202-03 (finding the third element established where the proposed deponent was 77 years old and in poor health, and that it was impossible to determine when the expected litigation would actually commence).

## ARGUMENT

The Court should grant Petitioners' application because it plainly satisfies the foregoing requirements. As set forth in the Petition and supporting Declarations, Mr. Holliday is the prospective plaintiff in an anticipated action arising from allegedly negligent care and treatment provided to him by providers at the Oak Orchard Community Health Center, Inc. ("OOCHC"), a Federally Qualified Health Center deemed eligible for coverage under the Federal Tort Claims Act.

Petitioners are requesting an *expedited* hearing in light of the exigent circumstances surrounding Mr. Holliday's health. *See In re I-35W Bridge Collapse Site Inspection,* 243 F.R.D. 349 (D.Minn. 2007) (where the Court noted the notice requirement for the hearing, and stated that "[g]iven the exigent circumstances, this Court would be sympathetic to a request to modify this requirement." *Id.* at 353.) As such, Petitioners are respectfully requesting that the Court modify the twenty-one (21) day notice requirement for the hearing and hold the hearing within seven (7) days given Mr. Holliday's terminal illness and imminent death. Petitioners are also respectfully requesting that the Court authorize and direct the pre-action deposition, and videotaped trial testimony, of Mr. Holliday to be held within fourteen (14) days of entry of the Court's Order.

### 1. Mr. Holliday's Deposition and Trial Testimonies Will Include Relevant Information Regarding his Malpractice and Damages Claims

Mr. Holliday's testimony is critical in developing the necessary facts to prove the elements of each claim and calculate damages. This is a medical malpractice claim arising from primary care and treatment rendered by the medical providers at the OOCHC over many years which allegedly

caused a delay in diagnosing Mr. Holliday's prostate cancer (Gleason 5+4=9). The issues in this case center on communications between Mr. Holliday and medical providers at the OOCHC as they relate to: (1) shared decision-making and patient education about the availability and benefits of prostate cancer screening; (2) whether or not OOCHC recommended or ordered PSA testing to screen Mr. Holliday for prostate cancer; and (3) discussions Mr. Holliday and medical providers at the OOCHC as to whether he has a family history of prostate cancer.

Mr. Holliday attended most of his medical appointments at the OOCHC alone; neither his wife nor any other family member accompanied him any time prior to 2021. *See* Declaration of John H. Holliday, Jr. dated July 14, 2023 ("Holliday Decl."), ¶ 11. Therefore, other than the OOCHC providers, Mr. Holliday is the only witness who will be able to testify about the nature and content of the communications (if any) during these visits regarding prostate cancer screening. *Id.*

The records obtained by Petitioners' counsel reveal that Mr. Holliday was seen by OOCHC providers on at least twelve (12) occasions after relevant guidelines regarding prostate cancer screening and shared decision-making were updated and published by the U.S. Preventive Services Task Force ("USPSTF"), including on: 9/12/18, 10/11/18, 11/23/18, 3/08/19, 5/31/19, 7/24/19, 6/30/20, 01/11/21, 4/13/21, 4/26/21, 5/12/21 and 6/24/21. *See* Declaration of Mary E. Langan, Esq. dated July 14, 2023 ("Langan Decl."), Exhibit A; *see also* Holliday Decl. ¶ 12. During several of these visits, blood work was ordered which **did not include PSA testing**. *See* Langan Decl., Exhibit A. The records do not show or suggest that any medical provider at OOCHC ever had or documented any shared decision-making/patient education discussions with Mr. Holliday about PSA testing. *Id.* Mr. Holliday's testimony as to the *absence* of any such conversations, shared-decision-making and patient education about PSA testing to screen for prostate cancer is critical.

Mr. Holliday is expected to testify that none of the providers at the OOCHC discussed PSA screening for prostate cancer with him during the relevant office visits in 2018, 2019, 2020 and

-4-

2021. *See* Holliday Decl. ¶ 12. He will further testify that, had he been informed about PSA screening, and educated on the potential benefits of early detection of prostate cancer, **he absolutely would have elected to undergo PSA testing** given his age, race, and overall state of health, including a prominent family history of prostate cancer (in his uncle). *Id.* at ¶ 13. As it was, he was not belatedly diagnosed with prostate cancer until July, 2021. *Id.* at ¶ 15.

In addition to issues that surround the alleged malpractice, Mr. Holliday is expected to testify about his injuries, his course of treatment, his pain and suffering, and his fear of death, all of which are matter to which only he can attest from his direct point of view. *Id.* at ¶ 17.

As detailed in the accompanying Declaration of Aymen Elfiky, M.D., a board-certified oncologist, Mr. Holliday is expected to become incapacitated and/or die before 8/17/23 (*i.e.*, the Government's six-month deadline to decide Petitioners' FTCA Claim in this matter). *See* Elfiky Decl. ¶ 7. Under the circumstances, it is vital that the Court authorize and direct that Mr. Holliday's deposition and trial testimonies be taken and preserved immediately.

### 2. Petitioners Expect to be Parties to a Cognizable Action in the Western District of New York

Petitioners expect to be plaintiffs in this action, which will be venued in the Western District of New York given that OOCHC and its providers are located within the District, and "a substantial part of the events or omissions giving rise to the claim occurred" within the District. 28 U.S.C. § 1391. However, Petitioners are presently *unable* to bring this action since the Government's six-month time period to decide the subject FTCA Claim has not yet expired. Petitioners properly presented their Claim on 2/17/23, and therefore, under 28 U.S.C. § 2675(a), the Government has until 8/17/23, to make a final disposition of the Claim. Petitioners are not permitted to file an action until a decision has been rendered on the Claims, or until the six-month period expires and Petitioners are able to deem the Claim to have been finally denied. Even if the Government were to

deny the Claim today, normal proceedings and discovery would not permit Petitioners to preserve Mr. Holliday's testimony before he dies.

### 3. Mr. Holliday's Testimony is Necessary to Preserve Evidence that Will Otherwise be Lost Due to His Death

Without prompt and appropriate relief under Rule 27, Mr. Holliday's testimony will be lost, and Court intervention prior to commencement of an action on the Claim is necessary to preserve this important evidence. Mr. Holliday's condition is terminal, and although it is impossible to state with precision how long it will be before he becomes incapacitated or dies, it is likely to occur in a matter of weeks. *See* Elfiky Decl. ¶ 5. Although Petitioners expect to commence this action as soon as they are able, it is unlikely that Mr. Holliday will be able to physically and/or cognitively participate in a deposition after that date. Therefore, it is imperative that his deposition and trial testimony be secured in the short term.

## CONCLUSION

Based on the foregoing, Petitioners respectfully pray that the Court grants their application in its entirety as a matter of law.

DATED:  July 14, 2023

Respectfully submitted,

PORTER LAW GROUP
*Attorneys for Petitioners*

By:  Mary E. Langan

Mary E Langan (517442)

Office & P.O. Address
100 Madison Street, 15th Floor
Syracuse, New York 13202-2725
315.477.9900
315.477.9923 (facsimile)

**FAX SERVICE NOT ACCEPTED**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

In the Matter of the Petition of JOHN H. HOLLIDAY, JR. and SARAH F. HOLLIDAY,

Petitioners.

Civil Action No.:

## DECLARATION OF JOHN H. HOLLIDAY, JR. IN SUPPORT OF A PETITION FOR AN ORDER AUTHORIZING HIS PRE-ACTION TESTIMONY

**JOHN H. HOLLIDAY, JR.**, under penalties of perjury, hereby declares as follows:

1.    I am a Petitioner in this action, along with my wife, Sarah F. Holliday (collectively, "Petitioners").  I am 60 years old.

2.    I respectfully make this Petition in support of an Order from the Court to allow for my pre-action deposition and trial testimony pursuant to Rule 27 of the Federal Rules of Civil Procedure ("FRCP").

3.    I reside at 213½ Bank Street, Batavia, New York 14020, in the County of Genesee, State of New York, within the Western District of New York.

4.    My wife and I expect to be parties to a legal action in this Court, but we are presently unable to file or commence that legal action.

5.    The subject matter of the expected legal action is a medical malpractice claim against my former providers at the Oak Orchard Community Health Center ("OOCHC"), which I understand is located within the Western District of New York.  Through the advice of my attorneys, I understand and believe that my medical providers at OOCHC failed to take timely, proper and adequate steps to screen for, diagnose and treat my prostate cancer, thereby allowing it to spread, metastasize, and develop into a Stage IV terminal disease.

6.      On or about February 17, 2023, my wife and I, with the assistance of our attorneys, presented administrative claims ("Claims") to the Government under the Federal Tort Claims Act ("FTCA"). *See* Declaration of Mary E. Langan, Esq. dated 7/14/23 ("Langan Decl."), ¶ 4, Exh. A.

7.      On or about March 1, 2023, the Government acknowledged receipt of the Claims. *See* Langan Decl. ¶ 8, Exh. B.

8.      I have been advised by my counsel that the Government has six (6) months to make a final disposition of the Claims, and that if it does not do so, the Claims may be deemed finally denied, and my wife and I would be permitted to file suit. I have been advised by my counsel that my wife and I are not permitted to file a legal action until a decision has been rendered on the Claims, or the Claims have been deemed finally denied at the conclusion of the six-month period.

9.      Nearly five (5) months have passed since Petitioners presented the claim, but the Government has not rendered a decision on the Claims.

10.     I attended most of my medical appointments at the OOCHC alone; neither my wife nor any other friend or family member accompanied me to these visits any time before 2021. Other than the proposed fact witnesses on behalf of the Government who provided care and treatment to me during office visits at the OOCHC, I am the only person able to testify what I was told (or not told) during those office visits.

11.     Based on records my attorneys have reviewed, I attended at least twelve (12) medical appointments at the OOCHC from 2018 through 2021. However, PSA screening for prostate cancer was never discussed with me or ordered during any of these visits. Other than the proposed fact witnesses on behalf of the Government who provided care and treatment to me during these visits, I am the only person able to testify that PSA screening for prostate cancer was never discussed with me or ordered during the OOCHC visits.

-2-

12. Had I been informed about PSA screening for prostate cancer and educated on the potential benefits of early detection of prostate cancer, I would have elected to undergo PSA testing, especially given my age, race (I am a black male), and overall state of health, including a family history of prostate cancer in my uncle. I am the only person able to testify to this key fact (*i.e.*, that I would have elected to undergo PSA testing).

13. The adverse party to the anticipated legal action is the Government. The medical providers who treated me at OOCHC, located at 860 Main Road, Corfu, New York 14036, include, but are not necessarily limited to, the following: Mary E. Obear, M.D., Ph.D.; Deborah Pisner, N.P.; Renee Robbins-Yonkin, N.P.; Jennifer Alejandro, N.P.; Jordan Francis, N.P.; and Thomas Finn, ANP.

14. I was not diagnosed with prostate cancer until July, 2021. Since my diagnosis, I have undergone numerous tests, imaging studies, chemotherapy, hormonal therapy, androgen deprivation therapy ("ADT"), PARP inhibitors, medication therapy, and other treatments, in attempts to slow the progression of my prostate cancer, but recent tests show the disease continues to advance and that my metastatic prostate cancer is not curable.

15. I have been advised by my oncology providers that my prostate cancer markers demonstrate that I am suffering from an aggressive disease, with a shorter overall survival rate.

16. I have suffered both physical and mental/emotional injuries as a result of my terminal cancer diagnosis, and I have experienced and continue to experience symptoms and limitations, medical treatments, and economic injuries including, but not limited to: high risk for recurrence of cancer (and, ultimately, death); generalized muscle pain/body aches; fatigue, loss of energy and appetite; stress, anxiety, depression and mental anguish; side effects of cancer treatments, including nausea, weakness, sleeplessness, peripheral pain, and many more, including isolation and toxicity; pain and suffering; loss of enjoyment of life; past and future medical expenses; past and future lost

wages; past and future loss of household services; and out-of-pocket expenses.  I am the only personal able to testify about the pain and suffering I am experiencing on a daily basis, and the mental/emotional impact of this diagnosis and knowledge that I am going to die in a matter of months, if not weeks.

17.     I am very concerned that I will become incapacitated and/or die before I am able to file a lawsuit and my deposition and trial testimony can be secured.

**WHEREFORE**, I respectfully request that the Court grant my application for an Order to authorize and direct my pre-action deposition and trial testimony, to occur within fourteen (14) days of the date of this Court's order, along with such other and different relief as to the Court deems just and proper.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on July  14  , 2023

_____
JOHN H. HOLLIDAY, JR.

-4-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

In the Matter of the Petition of JOHN H. HOLLIDAY, JR.
and SARAH F. HOLLIDAY,

Civil Action No.:

Petitioners.

## DECLARATION OF MARY E. LANGAN FOR AN ORDER
## PRESERVING THE PRE-ACTION TESTIMONY OF JOHN H. HOLLIDAY, JR.

**MARY E. LANGAN**, pursuant to 28 U.S.C. § 1746, hereby states under penalty of perjury as follows:

1.      I am an attorney duly licensed to practice law in the State of New York, and before this Court, and I am a partner in the law firm of Porter Nordby Howe LLP d/b/a Porter Law Group ("PLG"), attorneys for Petitioners JOHN H. HOLLIDAY, JR. and SARAH F. HOLLIDAY ("Petitioners").

2.      I respectfully make this Declaration in support of Petitioners' application to the Court for an Order, pursuant to Rule 27 of the Federal Rules of Civil Procedure ("FRCP"), authorizing and directing the pre-action deposition, and subsequent videotaped trial testimony, within fourteen (14) days, of Petitioner Administrative Claimant, and potential Plaintiff JOHN H. HOLLIDAY, JR. ("Mr. Holliday"), a claimant and anticipated Plaintiff under the Federal Tort Claims Act ("FTCA"), by reason of his terminal illness and imminent demise, together with whatever and further relief this Court deems just and proper.

## PROCEDURAL HISTORY

3.      This is a medical malpractice claim in which Petitioners allege that Mr. Holliday's primary care providers at the Oak Orchard Community Health Center ("OOCHC"), a Federally Qualified Health Center, located at 860 Main Road, Corfu, New York, 14036, within the Western District of New York, failed to take timely, proper and adequate steps to screen for, diagnose and

treat his prostate cancer, thereby allowing it to spread, metastasize and develop into a Stage IV terminal disease.

4.       On or about February 17, 2023, Petitioners, by and through PLG, properly presented duly-executed Standard Forms 95 (Claim for Damage, Injury or Death) to the Department of Health and Human Services ("DHHS"), pursuant the FTCA (28 U.S.C. §§ 1346, 2401(b), et seq.), in which they assert tort claims against the United States of America ("Government" or "USA") for the events, incidents, injuries and damages described therein.  Copies of the Standard Forms 95 and Addendum are attached hereto as **Exhibit A** (collectively, the "Claim").

5.       Petitioners are individuals who reside in the County of Genesee, State of New York, within the Western District of New York.

6.       The Government is an anticipated defendant in this matter.  The USA is a sovereign government and, by way of the FTCA, is a proper party to this action.

7.       Petitioners presented the Claim to the Government in a timely manner because it was presented to the proper federal agency within two (2) years of the alleged medical malpractice and wrongful conduct.

8.       By letter dated March 1, 2023, a copy of which is attached hereto as **Exhibit B**, DHHS acknowledged that it had received the Claim on February 17, 2023, for consideration and determination.  In its letter, DHHS asked for various documents and records, which PLG promptly supplied.

9.       Pursuant to 28 U.S.C. § 2675(a), the Government has six (6) months to make a final disposition of the Claim after it was presented, and if it does not do so, the Claim may, at Petitioners' option, be deemed finally denied, and Petitioners will then be permitted to file suit in the U.S. District Court for the Western District of New York.

10.     Nearly five (5) months have passed since Petitioners presented the Claim, but the Government has not rendered a decision on the Claim.

11.     By e-mails dated February 28, 2023; March 14, 2023; March 28, 2023 (2 emails); April 11, 2023; April 26, 2023; June 20, 2023; and June 28, 2023, copies of which are attached hereto as **Exhibit C**, I corresponded with counsel and representatives of DHHS regarding the status of the Claim, and I advised them of Mr. Holliday's terminal condition and failing health and invited them to engage in pre-suit settlement negotiations to resolve this Claim prior to the expiration of the six (6) month claim-determination period.  Counsel and representatives of DHHS have not replied to my communications.

12.     Specifically, on June 28, 2023, I contacted Erica Gibson, Esq. ("Ms. Gibson") by e-mail,[1] the attorney for DHHS, and advised her that, due to Mr. Holliday's terminal illness, I desire to schedule and complete his deposition and trial testimony on an expedited basis, before the expiration of the Government's six (6) month deadline to decide the Claim, as expressly authorized by FRCP 27.  As of the date of this Petition, Ms. Gibson has not responded to my email.

13.     Petitioners are not permitted to file an action until a decision has been rendered on the Claims, <u>or</u> the Claims have been deemed finally denied at the conclusion of the six (6) month period.

## JURISDICTION AND VENUE

14.     The Western District of New York is the proper venue pursuant to FRCP 27(a)(1) because the OOCHC, an adverse party, is located within the District.  In addition, upon information and belief, Petitioners reside within the District.

## RELEVANT FACTS

15.     Accompanying the Petition is the Declaration of a board-certified oncologist, Aymen Elfiky, M.D. ("Dr. Elfiky"), a copy of which is attached hereto as **Exhibit D** ("Elfiky Decl.").  Dr.

---

[1] PLG does not have a telephone number for Ms. Gibson, only an e-mail address.

Elfiky attests that Mr. Holliday has undergone chemotherapy, medication therapy, and hormonal therapy in attempts to slow the progression of his prostate cancer, but that recent tests show the disease continues to advance. Elfiky Decl. ¶ 3. Dr. Elfiky further attests that Mr. Holliday's metastatic prostate cancer is not curable, and it is certain that he will die from it. Elfiky Decl. ¶ 4.

16.     Most importantly, Dr. Elfiky opines that **Mr. Holliday will die within a matter of weeks**. Elfiky Decl. ¶¶ 5, 7. Mr. Holliday has exhausted all treatment options and has continued progression of disease and worsening pain. Dr. Elfiky affirms that it is highly likely that Mr. Holliday's ability to physically and cognitively participate in a deposition and/or trial testimony will be progressively compromised **within a matter of weeks**. Elfiky Decl. ¶¶ 6, 7.

## LEGAL ARGUMENT

17.     Petitioners expect to be parties (plaintiffs) in a future medical malpractice action against the USA relating to the Claim.

18.     Mr. Holliday, an administrative claimant under the FTCA, and an anticipated plaintiff, suffers from a terminal cancer diagnosis, and he is expected to die within a matter of weeks.

19.     Petitioners seek to memorialize and preserve Mr. Holliday's deposition and trial testimonies which will include information relevant and critical to the anticipated legal action that will otherwise be lost should he die before that action can be initiated and his testimony secured. If Mr. Holliday dies before he is able to testify, Petitioners will be severely prejudiced because they will be unable to present important direct evidence that supports the Claim including, but not limited to: (a) Mr. Holliday's knowledge of his subject office visits at OOCHC; (b) his conversations with providers at OOCHC; and (3) most importantly, the pain and suffering he has endured as a result of his untimely diagnosis and terminal illness. Any delay in securing Mr. Holliday's deposition and

trial testimony could result in the loss of accurate facts, accurate damage calculations, names and identity of adverse parties, and other information relevant to the expected litigation.

20.     FRCP 27 expressly authorizes the relief sought:  "A person who wants to perpetuate testimony about any matter cognizable in a United States court may file a verified petition in the district court for the district where any expected adverse party resides.  The petition must ask for an order authorizing the petitioner to depose the named persons in order to perpetuate their testimony." FRCP 27(a)(1).  As set forth in Petitioners' Memorandum of Law, our courts grant such relief when it is necessary to preserve the pre-action testimony of a terminally-ill claimant.

21.     Given Mr. Holliday's failing state of health, his deposition and trial testimonies can be conducted in such a way to minimize any risk or inconvenience to him, including by conducting the proceedings remotely using necessary and available video technology, in which case the stenographer should be authorized to administer and accept oaths remotely.

22.     Based on the foregoing, it is vital that the Court authorize and direct the perpetuation and preservation of Mr. Holliday's testimony, and I respectfully submit that DHHS and/or other Government representative should be compelled to schedule and participate in Mr. Holliday's deposition, and subsequent videotaped trial testimony, within fourteen (14) days.

**WHEREFORE**, I respectfully request that the Court grant Petitioners' application for an Order to authorize and direct the pre-action deposition, and trial testimony, of Petitioner JOHN H. HOLLIDAY, JR. within fourteen (14) days, along with such other and different relief as to the Court deems just and proper.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  July 14, 2023

MARY E. LLANGAN (517442)

# EXHIBIT A

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| U.S. Department of Health and Human Services<br>Office of the General Counsel<br>330 C Street, SW, Switzer Building, Suite 2600<br>Washington, District of Columbia 20201 | John H. Holliday, Jr., 213 1/2 Bank Street- Front<br>Batavia, New York 14020<br>c/o Porter Law Group<br>100 Madison Street, 15th Floor, Syracuse, NY 13202 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>09/22/1962 | 5. MARITAL STATUS<br>Married | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See attached Addendum to Claim for Damage, Injury or Death.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

None

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

None

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See attached Addendum to Claim for Damage, Injury or Death.

| 11. | WITNESSES |
|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| See attached Addendum | See attached Addendum |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 0.00 | 7,000,000 | 0.00 | 7,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| | 315-477-9900 (Attorney) | 02/10/2023 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001). |

| Authorized for Local Reproduction<br>Previous Edition is not Usable<br>95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

**INSURANCE COVERAGE**

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

None

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐ Yes ☒ No

None

17. If deductible, state amount.

0.00

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

None

19. Do you carry public liability and property damage insurance?  ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

None

**INSTRUCTIONS**

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A <u>SUM CERTAIN</u> FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN <u>TWO YEARS</u> AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

**PRIVACY ACT NOTICE**

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A.  *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

**PAPERWORK REDUCTION ACT NOTICE**

This notice is <u>solely</u> for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV. (2/2007) BACK

| **CLAIM FOR DAMAGE, INJURY, OR DEATH** | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | **FORM APPROVED OMB NO. 1105-0008** |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| U.S. Department of Health and Human Services<br>Office of the General Counsel<br>330 C Street, SW, Switzer Building, Suite 2600<br>Washington, District of Columbia 20201 | Sarah F. Holliday, 213 1/2 Bank Street- Front<br>Batavia, New York 14020<br>c/o Porter Law Group<br>100 Madison Street, 15th Floor, Syracuse, NY 13202 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH<br>08/06/1984 | 5. MARITAL STATUS<br>Married | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See attached Addendum to Claim for Damage, Injury or Death.

| 9. | **PROPERTY DAMAGE** |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

None

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

None

| 10. | **PERSONAL INJURY/WRONGFUL DEATH** |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See attached Addendum to Claim for Damage, Injury or Death.

| 11. | **WITNESSES** |
|---|---|
| **NAME** | **ADDRESS** (Number, Street, City, State, and Zip Code) |
| See attached Addendum | See attached Addendum |

| 12. (See instructions on reverse). | **AMOUNT OF CLAIM** (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 0.00 | 3,000,000 | 0.00 | 3,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side).<br>*Sarah Holliday* | 13b. PHONE NUMBER OF PERSON SIGNING FORM<br>315-477-9900 (Attorney) | 14. DATE OF SIGNATURE<br>02/10/2023 |
|---|---|---|

| **CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM** | **CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS** |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

| INSURANCE COVERAGE |
|---|
| In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property. |

**15. Do you carry accident Insurance?** ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, and Zip Code) and policy number. ☒ No

None

**16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?** ☐ Yes ☒ No | **17. If deductible, state amount.**

None | 0.00

**18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts.)**
None

**19. Do you carry public liability and property damage insurance?** ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, and Zip Code). ☒ No

None

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

| PRIVACY ACT NOTICE |
|---|

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:* The requested information is solicited pursuant to one or more of the
      following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R.
      Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

| PAPERWORK REDUCTION ACT NOTICE |
|---|

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) BACK

## ADDENDUM TO STANDARD FORM 95
## (CLAIM FOR DAMAGE, INJURY, OR DEATH)

### JOHN H. HOLLIDAY, JR. & SARAH F. HOLLIDAY

**1.    APPROPRIATE FEDERAL AGENCY**

U.S. Department of Health and Human Services
Office of the General Counsel
General Law Division
Claims and Employment Law Branch
330 C Street, S.W.
Attention: CLAIMS
Switzer Building, Suite 2600
Washington, D.C. 20201
Fax No.: 202-619-2922
HHS-FTCA-Claims@hhs.gov

**8.    BASIS OF CLAIM**

**a.    Persons and/or Parties Involved**

Claimants John H. Holliday, Jr. ("Mr. Holliday") and Sarah F. Holliday ("Mrs. Holliday") hereby make this claim against the United States of America ("Government"), as the proper party to answer for Claimants' personal injuries and damages resulting from the negligence, medical malpractice, omissions, carelessness and recklessness by the Government through its agents, officers and/or employees, and their disregard of Claimants' rights. Claimants do not know the identities of all individuals who were involved in the negligent acts and omissions that caused or contributed to Mr. Holliday's injuries and damages, but at this time are able to identify Oak Orchard Community Health Center, Inc. ("OOCHC")[1] and various medical providers providing care and treatment under the supervision of Mary E. Obear, M.D., Ph.D. Additional agents, officers and/or employees of the Government who were acting within the scope and authority of their agency, servitude or employment may be identified in the future based on Mr. Holliday's medical records, medical treatment, and/or other discovery.

Claimants hereby file this Administrative Claim pursuant to 28 U.S.C. § 2401(b) and the Federal Tort Claims Act, asserting tort claims against the Government for the events, incidents, injuries, and damages described herein.

**b.    Place of Occurrence**

The subject medical treatment and malpractice took place at OOCHC, a Federally Qualified Health Center, located at 860 Main Road, Corfu, New York, 14036, by various medical providers who provided care and treatment to Mr. Holliday under the supervision of, and on one occasion directly with, Mary E. Obear, M.D., Ph.D.

**c.    Statement of Known Facts and Circumstances Attending to Damage and Injury**

---

[1] also known as the Dr. Mary E. Obear Health Center in Pembroke, and formerly known as Pembroke Family Medicine

This is a medical malpractice claim arising from primary care and treatment rendered by the medical providers at the OOCHC to Mr. Holliday over many years which resulted in a delayed diagnosis of Stage IV metastatic prostate cancer (Gleason 5+4=9).

Mr. Holliday, now 60, has been married to Claimant Mrs. Holiday since October 2021, though they have been together for more than a decade. Claimants have one daughter together (age 10), and three sons (Mrs. Holliday's children from a prior relationship; Mr. Holliday is not the biological father). At all relevant times herein, Claimants have been residents of Batavia, New York.

## Summary of Care & Treatment

A copy of the medical records and imaging currently within Claimants' possession are being provided through a Dropbox link which accompanies the email delivering this claim and can also be found here: https://www.dropbox.com/scl/fo/k1dt0xftg9oc7knhfgr4m/h?dl=0&rlkey=x3ukpz32rosyws9vqfxhieksj

Mr. Holliday relied on the OOCHC to provide medical care, including primary care, from approximately 2014 through 2021. During his initial appointment with the OOCHC on 7/12/14, a PSA serum screening test was ordered by Laraine M. Wende, N.P. as part of the overall lab orders. **P-007 to P-012.** The results were interpreted to be normal at 0.65 ng/mL. **P-013 to P-015.** **This is the one and only PSA test Mr. Holliday underwent during all the years he was a patient of the OOCHC.**

At no time after the July, 2014 PSA test was another PSA test ordered, nor did any medical provider at OOCHC engage Mr. Holliday in any shared decision making or patient education regarding the availability and benefits of prostate cancer screening. These repeated failures are especially problematic since Mr. Holliday was presenting to medical providers at OOCHC with urologic complaints which were not being addressed by the providers at the OOCHC. For example, in December, 2017, Mr. Holliday expressed concern to Catherine Kucera, P.A. of OOCHC that the groin and back pain he was experiencing might be related to his prostate. **P-134 to P-141.** Ms. Kucera failed to recommend and/or order a PSA test to evaluate the etiology of this complaint. Interestingly, the records indicate that other preventative screening tests, like colonoscopy, were discussed and ordered.

Additionally, the notes from the various office visits over the years contain **no documentation or reference to any shared-decision making/patient education discussion about PSA screening, or to PSA in general.**

## Relevant Guidelines

In 2018, the U.S. Preventive Services Task Force ("Task Force") published updated clinical guidelines regarding the use of PSA screening for prostate cancer. The guidelines recommend that men ages 55 to 69 years *should* have an opportunity to discuss prostate cancer screening with their clinician so they can make an *informed decision* whether to undergo PSA testing. The Task Force guidelines have been adopted by many prominent medical and governmental organizations, including, but not limited to, the American Cancer Society, the Centers for Disease Control and Prevention, the Centers for Medicare and Medicaid Services, and the National Cancer Institute. A copy of the guidelines can be found at: https://www.uspreventiveservicestaskforce.org/uspstf/recommendation/prostate-cancer-screening.

Additionally, in 2018, the American Urologic Association ("AUA") published clinical guidelines regarding early detection of prostate cancer. The AUA Panel *strongly recommends* shared decision-making between clinicians and men ages 55 to 69 years who are considering PSA screening. The AUA

Panel defines "shared decision making," at a minimum, as a discussion between the clinician and the patient, but also broadens the discussion to include a patient's spouse, friend, or family member. A copy of the guidelines can be found at: https://www.auanet.org/guidelines/guidelines/prostate-cancer-early-detection-guideline.

**Government's Liability**

Mr. Holliday was seen by OOCHC providers on at least twelve (12) occasions after the relevant Task Force and AUA guidelines were published, including: 9/12/18, 10/11/18, 11/23/18, 3/8/19, 5/31/19, 7/24/19, 6/30/20, 1/11/21, 4/13/21, 4/26/21, 5/12/21 and 6/24/21. During several of these visits, blood work was ordered which inexplicably **did not include PSA testing**. Never once did any medical provider at OOCHC document any shared decision making/patient education discussion as mandated by most every authoritative medical society published recommendations on the subject of appropriate screening patients for early detection of prostate cancer.

Our board-certified experts in family medicine and oncology have reviewed Mr. Holliday's medical records and are prepared to testify about the numerous ways in which the OOCHC providers deviated from accepted standards of care, including, but not limited to: (1) failure to educate Mr. Holliday about the availability and potential benefits of PSA screening for early detection of prostate cancer in accordance with the Task Force and AUA guidelines, (2) failure to order or perform PSA screening over many years, (3) failure to document anything related to even the subject of PSA screening in Mr. Holliday's chart beyond his initial office visit in 2014, and (4) failure to learn an adequate and accurate family history of prostate cancer.

Our experts will testify that Mr. Holliday had a right to be involved in the decision-making process after an informed discussion with his primary care provider(s) about the benefits of PSA screening for early detection of prostate cancer. Mr. Holliday will testify that had he been informed about PSA screening and educated on the potential benefits of early detection of prostate cancer, **he absolutely would have elected to undergo PSA testing** given his age and overall state of health, including a prominent family history of prostate cancer (in his uncle).

Our board-certified expert oncologist is prepared to testify that the not only do the aforementioned acts/omissions constitute gross deviations from applicable standards of care, these deviations directly resulted in a meaningful delay in the diagnosis of Mr. Holliday's prostate cancer. But for these gross deviations, Mr. Holliday's prostate cancer would have almost certainly been diagnosed at a much earlier stage, prior to **metastases,** with a confined/encapsulated disease, with an opportunity to enjoy curative surgical interventions (*e.g.*, prostatectomy) **only** without the need for chemotherapy, hormonal therapy, and androgen deprivation therapy ("ADT"). Instead, by the time of his diagnosis in July, 2021, his PSA was elevated to 533.56 and he was suffering from widespread metastatic disease. A biopsy from August, 2021 revealed Gleason 5+4=9 disease, with metastases to the bones.

     d.    **Jurisdiction and Venue**

There is jurisdiction over this Claim by virtue of the Federal Tort Claims Act, 28 U.S.C. § 1346(b) et seq. and 28 U.S.C. § 2671, et seq. Pursuant to 28 U.S.C. § 1402(b), venue in this matter is properly set in the United States District Court for the Western District of New York, as that is the district in which Claimants reside and where the subject medical malpractice occurred.

**10.**    **NATURE AND EXTENT OF INJURIES AND DAMAGES**

Due to the Government's malpractice, Mr. Holliday has suffered, and continues to suffer, through a long and complex course to try everything possible to slow the inevitable progression and spread of his cancer. Mr. Holliday receives his oncological care from Roswell Park Cancer Institute in Buffalo, New York. From the time of diagnosis through the remainder of 2021, he underwent an aggressive chemotherapy course which proved to be ineffective. In fact, his PSA levels rose and continue to rise to this day. Most recently, his PSA went from 8.11 ng/mL on 9/26/22 to 12.58 ng/mL on 11/7/22. **P-3638 to P-3647.** Mr. Holliday's prostate cancer markers demonstrate that he is suffering from an aggressive disease with shorter overall survival rates. **P-3604 to P-3616.** His oncologists at Roswell Park have documented that his prognosis remains "guarded." **P-2051 to P-2078.**

After the completion of the unsuccessful chemotherapy regimen, Mr. Holliday underwent hormonal therapy (Eligard) and ADT (Xtandi). These therapies produced profoundly disabling side effects, including bilateral lower extremity edema, low blood pressure, nausea, weight loss, constipation, and two small bowel obstructions requiring hospitalization. In or around September, 2022, his oncologists discontinued Xtandi and initiated a PARP inhibitor, Olaparib[2]. **P-3604 to P-3616.** Mr. Holliday stopped all of these therapies in or around December, 2022, due to their ineffectiveness and in the face of his aggressive disease. He thereafter commenced new, recently approved medication therapy, Pluvicto[3].

Mr. Holliday began his first of six weekly Pluvicto treatments on December 23, 2022. This new therapy has unfortunately brought a new and devastating treatment consequence into Mr. Holliday's life: isolation. In addition to causing side-effects such as drowsiness, memory loss, fatigue and loss of appetite and taste, Pluvicto requires that Mr. Holliday be completely isolated from his family to protect them from radiation exposure. This means he cannot share a bed with his wife for seven (7) days after he receives his infusion and cannot sit next to or hug his daughter, who just turned 10 on January 4th, for a full fourteen (14) days. He cannot even use the same bathroom as his family unless it has been thoroughly cleaned and disinfected. For a devoted and loving family man, these limitations are a heavy load to bear.

Mr. Holliday's once joyful personal and professional life has been forever and inexorably ruined by his late-stage cancer diagnosis, and the resulting therapies. Mr. Holliday receives now chronic pain management and palliative care for the debilitating deep bone aches and exhaustion he suffers from due to the bony metastases. Once an energetic, healthy, and active man, Mr. Holliday is now forced to use a cane to walk more than a very short distance, and has difficulty navigating steps, curbs, and other everyday obstacles. Mr. Holliday was an extremely social person prior to his diagnosis, deriving great pleasure from interacting with those in his community, with other parents at his daughter's soccer practices and games, or when calling on various clients in his job as a merchant banker. Unfortunately, these types of interactions have become impossible, and out of necessity, he is now forced to spend most of his time at home. His interactions with his daughter take place mostly on the couch, watching TV. This past fall, it became too exhausting for him to drive, get in and out of the car, and navigate the various banking locations for his job, and he reluctantly notified his employer that he could no longer perform what is, by definition, a fundamental aspect of his career. In addition, he cannot work at all for several weeks after the Pluvicto therapy, even from home, due to the crippling physical side effects. The economic impact of this change in work status has proven to be incredibly difficult and is only compounded by the isolation and loss of what used to be his very favorite part of the job.

---

[2] Olaparib is a type of drug used to treat men who are known to have BRCA1 or BRCA2 gene change, and whose prostate cancer has stopped responding to hormone therapy

[3] Pluvicto is a newly approved treatment for metastatic castration-resistant prostate cancer. It is an intravenous radioligand therapy.

As a direct and proximate result of the Government's negligent acts and omissions, by and through its employees, agents and representatives, Claimants are seeking general damages for the terminal cancer Mr. Holliday is currently battling, his considerable past and future pain and suffering and loss of enjoyment of life, the emotional toll of, among other things, knowing his cancer should have been cured is taking upon him, and Mrs. Holliday's loss of consortium.  Mr. Holliday has suffered both physical and mental/emotional injuries, he has experienced and/or continues to experience symptoms and limitations, he has undergone and/or will undergo medical treatment, and he has incurred other economic and non-economic damages including, but not necessarily limited to:

- Stage IV metastatic prostate cancer;
- Metastasis to the bones;
- High risk for recurrence of cancer (and, ultimately, death);
- Generalized muscle pain/body aches;
- Fatigue, loss of energy and appetite;
- Stress, anxiety, depression and mental anguish;
- Side effects of cancer treatments, including nausea, weakness, sleeplessness, peripheral pain, and many more, including most recently, isolation and toxicity;
- Pain and suffering;
- Loss of enjoyment of life;
- Past and future medical expenses;
- Past and future lost wages;
- Past and future loss of household services; and
- Out-of-pocket expenses.

How long Mr. Holliday will live remains unknown—but his prognosis is dire.  It is telling that the Pluvicto treatment can only be administered with the caveat: "until disease progression or unacceptable toxicity."  Mr. Holliday's course of treatment is not, and never will be, curative.  If the Pluvicto treatment does not halt the current course or becomes too toxic for Mr. Holliday's body to endure, his oncologists plan to attempt a clinical trial of T-cell infusion therapy—a therapy for which he has already been approved.  **P-4358 to P-4367.**  As with all clinical trials, the outcome of the trial's effectiveness is presently unknown.  Plaintiff's oncology expert is prepared to testify that regardless of the effectiveness of his current or future therapies, Mr. Holliday has Stage IV metastatic prostate cancer, his PSA levels are presently uncontrolled and continue to rise, he will never escape the therapies and treatments, he will never be cured, and he will inevitably die a terrible death from the disease.

Mrs. Holliday will be an excellent witness about how Mr. Holliday's diagnosis and treatment has affected her life and their marriage.  When Mr. Holliday is not in the Pluvicto isolation period, he can no longer perform sexually, and Mrs. Holliday is emotionally devastated and physically drained knowing but for the Government's persistent gross negligence, none of this needed to be as it is, and her husband's cancer could have/would have been cured.  The incredibly fulfilling marriage they once enjoyed is now replaced with pain and despair, and the constant anxiety about Mr. Holliday's terribly painful death that will come soon.  Mrs. Holliday will make an excellent witness at trial, and we are confident that the award for her loss of consortium claim would be significant.

Mr. Holliday is unable and unqualified to further itemize his pecuniary damages at this time.  Mr. Holliday does not know the nature, severity, and duration of the pain and suffering that he will suffer in the future.  The amount to which Mr. Holliday is entitled as compensation for his injuries, past and future pain and suffering and past and future medical expenses, are either not or not yet subject to

mathematical calculation. The values and amounts of such damages will be the subject of expert disclosure and/or they are solely within the province of the trier of fact.

Mr. Holliday does not yet know whether a lien for medical expenses paid will be asserted with regard to this claim or any recovery that Mr. Holliday may obtain. If Mr. Holliday is placed on notice of a lien, this Addendum will be supplemented and/or amended accordingly.

## 11.    WITNESSES (PRESENTLY KNOWN)

Oak Orchard Community Health Center, Inc./Dr. Mary E. Obear Health Center in Pembroke
860 Main Road
Corfu, New York 14036

Mary Obear, M.D., Ph.D.
c/o Oak Orchard Community Health Center, Inc./Dr. Mary E. Obear Health Center in Pembroke
860 Main Road
Corfu, New York 14036

Deborah Piser, N.P.
c/o Oak Orchard Community Health Center, Inc./Dr. Mary E. Obear Health Center in Pembroke
860 Main Road
Corfu, New York 14036

Renee Robbins-Yonkin, N.P.
c/o Oak Orchard Community Health Center, Inc./Dr. Mary E. Obear Health Center in Pembroke
860 Main Road
Corfu, New York 14036

Jennifer Alejandro, N.P.
c/o Oak Orchard Community Health Center, Inc./Dr. Mary E. Obear Health Center in Pembroke
860 Main Road
Corfu, New York 14036

Jordan Francis, N.P.
c/o Oak Orchard Community Health Center, Inc./Dr. Mary E. Obear Health Center in Pembroke
860 Main Road
Corfu, New York 14036

Thomas Finn, ANP
c/o Oak Orchard Community Health Center, Inc./Dr. Mary E. Obear Health Center in Pembroke
860 Main Road
Corfu, New York 14036

In light of the foregoing, and in an abundance of caution, Mr. Holliday's demand for compensatory damages is Seven Million Dollars ($7,000,000), and Mrs. Holliday's demand is Three Million Dollars ($3,000,000).

DATED:  February 10, 2023

_____
JOHN H. HOLLIDAY, JR.

_____
SARAH F. HOLLIDAY

# EXHIBIT B



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Office of the General Counsel
General Law Division
Claims Office
330 C Street, S.W.
Switzer Building, Suite 2100
Washington, D.C. 20201
Charlene.Robinson@hhs.gov

**3/1/2023**

*VIA BOX.COM:* **mlangan@pnhlawyers.com**

Mary E. Langan, Esq.
Porter Law Group
100 Madison Street, 15th Floor
Syracuse, NY 13202

Re:    <u>**Administrative Tort Claim of John H. Holliday, Jr.,**</u> Claim No. 2023-0201

       <u>**Administrative Tort Claim of Sarah F. Holliday,**</u> Claim No. 2023-0202

Dear Counsel:

    This will acknowledge the receipt of your administrative tort claims, filed on behalf of your clients, John H. Holliday, Jr., and Sarah F. Holliday. Your clients' claims were received in the Claims Office on February 17, 2023 for consideration and reply.

    In order to evaluate your clients' administrative tort claims, please forward the following substantiating evidence directly to this office **within 15 days** at the address above:

      1.)    <u>**ELECTRONIC COPY**</u> of any inpatient and outpatient private medical records that *relate* to the allegations contained in the administrative tort claims**;**

      2.)    <u>**ELECTRONIC COPY IN PDF OR JPEG FORMAT**</u> of all *pertinent* X-rays, diagnostic imaging, ultrasonography, computed tomography (CT) and magnetic resonance imaging (MRI);

      3.)    Itemized bills pertaining to all pertinent medical expenses incurred by reason of the alleged incident;

      4.)    If the prognosis reveals the necessity for future treatment, a statement of expected duration of, and expenses for, such treatment;

Mary E. Langan, Esq.
Re: Claim No. 2023-0201 and 2023-0202
Pg. 2

    5.)    If a claim is made for lost wages, a signed statement from your client's employer showing actual time and wages lost;

    6.)    Any other evidence or information that you believe has bearing on the responsibility of the health center and its employees for the injuries and/or the damages claimed; and

    7.)    Evidence of your authority to represent your clients in this matter.

**<u>PLEASE SEND THE MATERIALS TO MY EMAIL IN A SECURE, PASSWORD PROTECTED FORMAT AND EMAIL THE PASSWORD TO ME IN A SEPARATE EMAIL OR VIA BOX.COM.</u>**

Please be advised that all evidence must be furnished by a claimant within a reasonable period of time.   By operation of 45 C.F.R. § 35.4(d), a claimant's failure to furnish evidence necessary to make a determination of his/her administrative tort claim within three months after a request for such evidence has been made, may be deemed an abandonment of the administrative tort claim.   Further, a claimant's failure to provide requested evidence during the administrative tort claim process may result in a finding that his/her administrative remedies have not been exhausted, even if suit is filed more than six months after filing an administrative tort claim. See Swift v. United States, 614 F.2d 812 (1st Cir. 1980).

    Sincerely,

    *Charlene Robinson*

    Charlene Robinson
    Paralegal Specialist
    Claims Office

EXHIBIT C

| | |
|---|---|
| **From:** | Mary E. Langan |
| **Sent:** | Wednesday, June 28, 2023 2:40 PM |
| **To:** | 'erica.gibson@hhs.gov' |
| **Cc:** | 'Robinson, Charlene (HHS/OGC)'; 'mariah.fox@hhs.gov'; 'james.touhey@hhs.gov''; Bethany C. Raymond; Rainer F. Grimme |
| **Subject:** | RE: 2023-0201 & 2023-0202: John Holiday, Jr. |

Hi Erica:

Having not heard back from you and/or HHS in response to my multiple e-mails below, I assume that means that HHS is not interested in discussing a pre-suit resolution of this claim.  As such, due to Mr. Holliday's failing health and impending death, we will be moving forward with petitioning the District Court to secure Mr. Holliday's deposition and trial testimony in the next few weeks pursuant to Federal Rule of Civil Procedure 27 (i.e. before the Government's 6-month deadline to decide the claim of 8/17/23).

As you know, Mr. Holliday's suffers from Stage IV widely metastatic prostate cancer as a result of the Government's malpractice.  Tragically, his prognosis has worsened and his death is imminent.  We presented this claim via SF-95s and an Addendum on 2/17/23.  We have uploaded <u>all</u> medical records in our possession to the secure Box.com link.  The Government's deadline to decide the claim is 8/17/23, but in light of Mr. Holliday's condition, we must swiftly move forward with securing his deposition and trial testimony now pursuant to FRCP 27.

I had hoped we'd be able to resolve this matter at the claim stage versus having to put this matter into suit and litigate it, but it looks like that's where we're headed.

If you have any questions, or if you think there is any reasonable expectation that we can resolve this matter in the next few weeks, please let me know.  Otherwise, we expect to file our Petition with the Court in the coming days.

Best,

Mary

**From:** Mary E. Langan
**Sent:** Tuesday, June 20, 2023 12:41 PM
**To:** 'erica.gibson@hhs.gov' <erica.gibson@hhs.gov>
**Cc:** 'Robinson, Charlene (HHS/OGC)' <Charlene.Robinson@hhs.gov>; Bethany C. Raymond <braymond@pnhlawyers.com>; Rainer F. Grimme <rgrimme@pnhlawyers.com>
**Subject:** RE: 2023-0201 & 2023-0202: John Holiday, Jr.

Hi Erica:

I am following up on the status of the above-referenced FTCA claim.  As you're likely aware, the government's 6-month deadline to respond to the claim is 8/17/23.  Would you please advise as to where the agency is in their investigation, and if they'll be interested in pre-suit negotiations regarding this claim?  Thank you for your attention to this.

Best,

Mary Langan

**From:** Mary E. Langan
**Sent:** Wednesday, April 26, 2023 11:31 AM
**To:** 'erica.gibson@hhs.gov' <erica.gibson@hhs.gov>
**Cc:** 'Robinson, Charlene (HHS/OGC)' <Charlene.Robinson@hhs.gov>; Bethany C. Raymond <braymond@pnhlawyers.com>; Rainer F. Grimme <rgrimme@pnhlawyers.com>
**Subject:** RE: 2023-0201 & 2023-0202: John Holiday, Jr.

Hi Erica:

Following up again on the below e-mails regarding the above-referenced FTCA claims, which I hope to discuss with you in the short term.  Please let me know where the agency is with their investigation and if there's anything more you need from me before we can discuss this matter at the claim stage.  Thank you!

-Mary

**From:** Mary E. Langan
**Sent:** Tuesday, April 11, 2023 1:34 PM
**To:** 'erica.gibson@hhs.gov' <erica.gibson@hhs.gov>
**Cc:** 'Robinson, Charlene (HHS/OGC)' <Charlene.Robinson@hhs.gov>; Bethany C. Raymond <braymond@pnhlawyers.com>; Rainer F. Grimme <rgrimme@pnhlawyers.com>
**Subject:** RE: 2023-0201 & 2023-0202: John Holiday, Jr.

Hi Erica:

I am following up on my email below regarding the above-referenced FTCA claims.  Do you have any time this week to discuss this matter?

Best,

Mary

**From:** Mary E. Langan
**Sent:** Tuesday, March 28, 2023 4:04 PM
**To:** 'erica.gibson@hhs.gov' <erica.gibson@hhs.gov>
**Cc:** 'Robinson, Charlene (HHS/OGC)' <Charlene.Robinson@hhs.gov>; Bethany C. Raymond <braymond@pnhlawyers.com>; Rainer F. Grimme <rgrimme@pnhlawyers.com>
**Subject:** RE: 2023-0201 & 2023-0202: John Holiday, Jr.

Hi Erica:

I hope you are well.  I'm not sure you remember me, but we previously worked on a matter when I was an AUSA in the U.S. Atty's Office for the NDNY.  I can't remember the name of the case, but I do remember us working together!

I was just advised by Charlene that you're the attorney assigned to handle the above-referenced claims.  As you're likely aware, we presented this claim via SF-95s and an Addendum on 2/17/23.  Per Charlene's request, we have uploaded all medical records in our possession to the secure Box.com link.  Since the claim was presented in February, Mr. Holliday's condition has worsened; he was in the hospital for most of February and he's been advised by his oncologist that his life expectancy is being measured in terms of months, not years.  As a former AUSA who handled mostly medical malpractice matters, I am well aware of the rules governing FTCA claims, and I know the agency has 6-months to decide the claim.  However, in light of Mr. Holliday's worsening condition, anything you/your office can do to expedite evaluating these claims would be helpful as my client's future remains unknown.  I'm hoping we can attempt to resolve this matter at the claim stage versus having to put this matter into suit and litigate it against my former colleagues.

Charlene advised that your office is still awaiting responses to requests for various medical records, including from the health center itself.  While I understand and respect that your office will obtain their own copies of the records, I'd like to reiterate that we have provided you with all of the records that we've obtained, and I am confident that these records will give you what you need to evaluate these claims.  In addition, our detailed Addendum references relevant Bates Pages and outlines the damages/injuries (which, as mentioned, are ongoing and just getting worse).

Please let me know if there is anything else you need to evaluate these claims.  Thank you for your consideration.  I look forward to working with you again (albeit in a different capacity this time!)

Best,

Mary

**From:** Mary E. Langan
**Sent:** Tuesday, March 28, 2023 2:21 PM
**To:** 'Robinson, Charlene (HHS/OGC)' <Charlene.Robinson@hhs.gov>
**Cc:** 'mariah.fox@hhs.gov' <mariah.fox@hhs.gov>; Evans, Iris (HHS/OGC) <Iris.Evans@hhs.gov>; 'Christofferson, Mary (HHS/OGC)' <Mary.Christofferson@hhs.gov>
**Subject:** RE: 2023-0201 & 2023-0202: John Holiday, Jr.

Hi Charlene:

I am following up on our e-mail exchange below.  Please provide the name of the HHS attorney assigned to investigate these claims.  I am copying other HHS attorneys and paralegals whom I've worked with in the past to see if they can assist, as well.  Thank you.

Best,

Mary Langan

**From:** Mary E. Langan
**Sent:** Tuesday, March 14, 2023 1:46 PM
**To:** 'Robinson, Charlene (HHS/OGC)' <Charlene.Robinson@hhs.gov>
**Cc:** Bethany C. Raymond <braymond@pnhlawyers.com>; Rainer F. Grimme <rgrimme@pnhlawyers.com>
**Subject:** RE: 2023-0201 & 2023-0202: John Holiday, Jr.

Charlene:

Following up on my email below, **would you please provide the name of the HHS attorney assigned to investigate these claims?**

As mentioned, my client's condition has worsened since we served the SF-95 with Addendum.  I would like to speak with the attorney investigating the claim ASAP to expedite the investigation of these claims.  Please also be advised that as a former Assistant U.S. Attorney who served in the civil division of the Northern District of New York for 5 years, I am extremely familiar with the claims process.  I understand that the agency has 6-months to decide the claim, but for all the reasons outlined in the Addendum to the SF-95s, I believe this matter should settle now, at the claim stage, versus being put into suit and we would all spend significant time and money on discovery, experts, depositions etc.

Thank you.

Best,

Mary

**From:** Mary E. Langan
**Sent:** Tuesday, February 28, 2023 4:40 PM
**To:** 'Robinson, Charlene (HHS/OGC)' <Charlene.Robinson@hhs.gov>
**Cc:** Bethany C. Raymond <braymond@pnhlawyers.com>; Rainer F. Grimme <rgrimme@pnhlawyers.com>
**Subject:** RE: 2023-0201 & 2023-0202: John Holiday, Jr.

Hi Charlene:

Would you please add my legal assistant, Rainer Grimme, as an authorized viewer/uploader for the Box.com link?  His email is rgrimme@pnhlawyers.com

Also, would you please advise as to the name of the HHS attorney assigned to these claims?

Please be advised that my client's condition has worsened over the last few weeks since we served the SF-95 with Addendum (courtesy copy of Addendum, attached).  Anything you/your office can do to expedite evaluating these claims would be helpful, as John's future remains unknown.  Earlier today he advised that he's been in the hospital all but four (4) days in February, and his oncologist is referring to his life expectancy in terms of months, not years.  I understand that the agency has 6-months to decide the claim, but for all the reasons outlined in the Addendum to the SF-95s, I believe this matter should settle now, at the claim stage, versus being put into suit.

Lastly, please be advised that I am a former Assistant U.S. Attorney and served in the civil division of the Northern District of New York for 5 years.  I worked primarily on medical malpractice cases and am very familiar with the federal claim and litigation process.  I left federal service at the end of 2020 and have been doing plaintiff's medical malpractice work since that time.  If I end up filing suit and moving forward with litigation in this matter, I'll be litigating against my former colleagues.  Given the clear malpractice in this case, I invite HHS to consider resolving this matter pre-litigation before we all spend the significant time and money on discovery, experts, depositions etc.

Thank you for your consideration.

Best,

Mary Langan

# EXHIBIT D

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

In the Matter of the Petition of JOHN H. HOLLIDAY, JR. and SARAH F. HOLLIDAY,

Petitioners.

Civil Action No.:

## DECLARATION OF AYMEN ELFIKY, M.D., M.A., MPH, MSC

**AYMEN ELFIKY, M.D. M.A., MPH, MSC**, under penalties of perjury, hereby declares as follows:

1.      I am a physician licensed to practice in the State of New York, and I am board certified in Internal Medicine and Medical Oncology.

2.      I have reviewed pertinent medical records of John H. Holliday regarding his July, 2021 diagnosis of Stage IV prostate cancer (with metastasis to his bones), and his subsequent cancer treatments.

3.      Mr. Holliday has undergone and continues to undergo extensive treatments including chemotherapy, hormonal therapy, and other targeted medication therapy.  His treatments will, at best, only temporarily slow the progression of his prostate cancer and metastases, as the disease has already developed resistance to these therapies.

4.      Mr. Holliday's prostate cancer is incurable, and his condition is terminal; it has and will continue to rapidly advance and cause his death.

5.      It is impossible to state with precision how long it will be before Mr. Holliday becomes incapacitated, and dies, from his prostate cancer.  However, in my opinion, based in part upon my experience having treated thousands of patients with prostate cancers over a period of more than twenty (20) years, it is inevitable that his medical treatment/therapies will fail, and that he will become incapacitated and/or die within a period of weeks.

6.      As Mr. Holliday's cancer progresses, his overall state of health, including his cognitive and physical capacity, will dramatically decline.  He has already become progressively less

able to carry on his daily activities, and less able to meaningfully participate in his affairs, despite treatments designed to slow that process of decline.

7.      While no physician can predict a patient's demise with certainty, there is a high likelihood that Mr. Holliday will become incapacitated and/or die before 8/17/23 (what I am told is the expiration of the Government's 6-month deadline to decide the Administrative Claim in this matter).  Moreover, even if he survives until 8/17/23, it is unlikely he will be physically and/or cognitively able to participate in a deposition after that date.

8.      My opinions herein have been rendered within a reasonable degree of medical certainty in the specialty of Oncology.

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on July __14__ , 2023.                          _____

**AYMEN ELFIKY, M.D., M.A., MPH, MSC**



# PORTER LAW GROUP
### NEW YORK'S PERSONAL INJURY LAWYERS

*Mary E. Langan*
*Direct: 315.530.1631*
*mlangan@pnhlawyers.com*



**FEDERAL EXPRESS - 781162145263**

July 14, 2023



United States District Court, Western District of New York
Office of the Clerk of Court
2 Niagara Square
Buffalo, New York 14202-3498

23-MC-27

**Re:** ***In the Matter of the Petition of John H. Holliday, Jr. and Sarah F. Holliday***
     **Case No.:**

Dear Sir or Madam:

Pursuant to Fed. R. Civ. P. 5(d)(4) and WDNY Local Rule 5.6, enclosed please find the following documents for filing as a Miscellaneous Case:

1. Notice of Petition for an Order Authorizing the Pre-Action Testimony of John H. Holliday, Jr.;
2. Declaration of John H. Holliday, Jr. in Support of an Order Authorizing his Pre-Action Testimony;
3. Declaration of Mary E. Langan, Esq. for an Order Authorizing the Pre-Action Testimony of John H. Holliday, Jr.;
4. Declaration of Board-Certified Oncologist Aymen Elfiky, M.D., M.A., MPH, MSC; and
5. Memorandum of Law in Support of Petitioners' Application for an Order Preserving the Pre-Action Testimony of John H. Holliday, Jr.

I have also enclosed a check in the amount of $49.00 to cover the cost of filing these documents.

If you have any questions or concerns, please do not hesitate to contact me. Thank you for your courtesies and attention.

Very truly yours,

PORTER LAW GROUP

Mary E. Langan

MEL/bcr
Encs.